# CIRCUIT COURT OF THE CITY OF NORFOLK

Darnell Lewis

v.

Jyoti Upadhyay *et al.*

March 3, 2015

Case No. (Civil) CL14-3682

By JUDGE JUNIUS P. FULTON, III

The Court has heard argument on the applicability of the Federal Patient Safety Act Privilege to email and other electronic correspondence and communications received by the defendant Dr. Jyoti Upadhyay from Dr. Arnold Zaritsky, Vice President of Clinical Services at Children's Hospital of the King's Daughters (CHKD).

Defendant, Dr. Jyoti Upadhyay, asserts the privilege and is joined by CHKD, although not a party to this matter. CHKD asserts that it has a compelling interest in the Court's ruling in this matter as a member of the relevant Patient Safety Organization (PSO) as the entity that conducted the investigation which resulted in the communications in question.

CHKD asserts that these emails are patient safety work product prepared as part of an investigation conducted by Dr. Arnold Zaritsky for or on behalf of CHKD, for the purpose of reporting to a PSO. There is no dispute that Dr. Zaritsky, as Senior Vice President for Clinical Services at CHKD, was not involved in the care and treatment of the infant plaintiff. As part of his duties as Senior Vice President for Clinical Services, Dr. Zaritsky is a recognized and designated patient safety officer for CHKD. After the surgery which is the subject of this lawsuit, Dr. Upadhyay contacted Dr. Zaritsky in his role as a CHKD patient safety officer to discuss the care rendered to Darnell Lewis. Dr. Zaritsky undertook an investigation and assessment of the care rendered to Darnell Lewis as a result of Dr. Upadhyay's report. Part of that investigation included Dr. Zaritsky's meeting with health care professionals involved in the care of Darnell Lewis and other professional staff at CHKD

who provide assistance with his investigation. All who were consulted were advised that their communications and information associated with the investigation would be confidential and privileged from disclosure.

The plaintiff points out that the emails and electronic communications between Dr. Upadhyay and Dr. Zaritsky do not qualify under the Patient Safety Act definition for patient safety work product for two reasons. First, the emails were never actually sent to a "patient safety organization;" and, second, separate state and federal reporting requirements prevent the information in this case from receiving federal protection.

CHKD responds by arguing that Plaintiff misinterprets the Patient Safety Act. According to CHKD, information becomes "patient safety work product" the moment it is collected in anticipation of reporting to a "patient safety organization" and the statute does not require actual reporting. Additionally, CHKD claims that separate reporting requirements do not eviscerate the statutory privilege. Rather, the emails qualify as "patient safety work product" so long as the information was gathered in and remains in a "patient safety evaluation system."

The Patient Safety Act provides that "patient safety work product shall be privileged and shall not be … subject to discovery in connection with a … State … civil … proceeding." 42 U.S.C. § 299b-22(a). Three provisions identify how information becomes patient safety work product. First, information may become patient safety work product if it is assembled or developed by a provider for the purpose of reporting to a PSO and is reported to a PSO. 42 U.S.C. § 299b-21(7)(A)(i)(I). Second, patient safety work product is information developed by a PSO for the conduct of patient safety activities. 42 U.S.C. § 299b-21(7)(A)(i)(II). Third, patient safety work product is information that constitutes the deliberations or analysis of, or identifies the fact of reporting pursuant to, a patient safety evaluation system. 42 U.S.C. § 299b-21(7)(A)(ii).

Patient safety work product "does not include information that is collected, maintained, or developed separately, or exists separately from a patient safety evaluation system." 42 U.S.C. § 299b-21(7)(B)(ii). A patient safety evaluation system refers to "the collection, management, or analysis of information for reporting to or by a patient safety organization." 42 U.S.C. § 299b-21(6). Lastly, a patient safety organization "means a private or public entity or component thereof that is listed by the Secretary… ." 42 U.S.C. § 299b-21(4).

Plaintiff contends that Dr. Zaritsky's affidavit fails to establish that the emails are privileged because the affidavit does not show a delivery of the emails to a patient safety organization. In the affidavit, Dr. Zaritsky maintained that "[a]t all times, my communications with Dr. Upadhyay [sic], by mail, by phone, or in person, regarding care rendered to Darnell Lewis, were undertaken as part of and for the purpose of reporting to a PSO [patient safety organization]." (Aff. at ¶ 7.) Plaintiff also maintains that

Dr. Zaritsky's deposition, taken on August 29, 2013, contradicts statements made in the affidavit. (Feb. 2015 Tr. at 40.)

Beginning with the actual reporting argument, a number of courts have considered the question and required actual delivery of patient safety work product to a patient safety organization. *See Lee Medical, Inc.*, 312 S.W.3d 515, n. 70 (Tenn. 2010) ("Patient safety work product that is not actually reported to a patient safety organization is not privileged under PSQIA."); *see also Francis v. United States*, 09 Civ. 4004 (GBD) (KNF), 2011 U.S. Dist. lexis 59762, at *21 (S.D. N.Y. May 31, 2011) ("The quality assurance review documents at issue in this action are not protected under the PSQIA, since they were not provided to a PSO."); *Venosh v. Henzes*, 31 Pa. D. & C. 5th 411, 436 (Common Pleas Court of Lackawanna County, Pa., 2013) ("The privilege is inapplicable if the patient safety work product materials are not actually furnished to a PSO."). Indeed, in earlier litigation between these parties, a judge of this Court ruled likewise.

Despite those decisions, regulations issued by the Secretary of the Department of Health and Human Services, the agency responsible for implementing the Patient Safety Act, provide a more expansive definition. According to the regulations, patient safety work product includes information that is assembled or developed by a provider for reporting to a PSO and are reported to a PSO, which includes information that is documented as within a patient safety evaluation system for reporting to a PSO, and such documentation includes the date the information entered the patient safety evaluation system. Patient Safety Act, 73 FR 70798 (Nov. 21, 2008) (codified at 42 C.F.R., pt. 3, § 3.20).

Under the Secretary's definition of patient safety work product, information is protected at collection. The Secretary explained that:

> The proposed rule required that information must be reported to a PSO before the information may become patient safety work product under the reporting provision of the definition of patient safety work product. However, this standard left information collected, but not yet reported to a PSO, unprotected, a cause of significant commentator concern.

Patient Safety Act, 73 FR 70742 (Nov. 21, 2008).

Naturally, allowing protection at the time of collection raised concerns. Some commentators feared that, since information may be protected back to the time of collection, providers would no longer be required to promptly report information to a PSO to ensure protection. In response, the Secretary stated that, "[a]lthough we believe this is an unavoidable result of the modification, we believe the likely impact may be rare because providers are likely to engage PSOs for their expertise which requires such reporting." Patient Safety Act, 73 FR 70742 (Nov. 21, 2008).

After much debate, the Secretary adopted a final rule that supports a finding that the emails qualify as patient safety work product. Specifically:

> The final rule provides that information documented as collected within a patient safety evaluation system by a provider shall be protected as patient safety work product. A provider would document that the information was collected for reporting to a PSO and the date of collection. The information would become patient safety work product upon collection. Additionally, a provider may document that the same information is being voluntarily removed from the patient safety evaluation system and that the provider no longer intends to report the information to a PSO, in which case there are no protections.
>
> If a provider fails to document this information, the Department will presume the intent to report information in the patient safety evaluation system to the PSO is present, absent evidence to the contrary.

Patient Safety Act, 73 FR 70741 (Nov. 21, 2008). The Secretary added that "there is no expiration date for an event that would prohibit future protection of a report of it as patient safety work product so long as the protection of the information is pursuant to the final rule." Patient Safety Act, 73 FR 70743 (Nov. 21, 2008).

In this case, Dr. Zaritsky and Dr. Upadhyay failed to document the emails as collected within a patient safety evaluation system. Despite this failure, the Court must presume the doctors intended to report the information in the patient safety evaluation system to the PSO absent evidence to the contrary. Looking to the record, an affidavit signed by Dr. Zaritsky corroborates the presumption by stating that "[a]t all times, my communications with Dr. Upadhyay [sic], by mail, by phone, or in person, regarding care rendered to Darnell Lewis, were undertaken as part of and for the purpose of reporting to a PSO [patient safety organization]." (Aff. at ¶ 7.) In addition, Plaintiff failed to highlight sufficient evidence to rebut the presumption that the doctors intended to report the emails in a patient safety evaluation system.

As a result, the unreported emails are privileged patient safety work product under the Patient Safety Act because they were collected within a patient safety evaluation system.

Next, the Plaintiff argues that, even if the emails need not be actually delivered, the privilege is eliminated because the hospital must use that information to fulfill other reporting obligations under state or federal requirements. However, the Patient Safety Act contemplates a framework where the privilege and confidentiality sections work alongside other reporting requirements. The Secretary explained that:

> Generally, information may become patient safety work product when reported to a PSO. Information may also become patient safety work product upon collection within a patient safety evaluation system. Such information may be voluntarily removed from a patient safety evaluation system if it has not been reported and would no longer be patient safety work product. *As a result, providers need not maintain duplicate systems to separate information to be reported to a PSO from information that may be required to fulfill state reporting obligations.*
>
> *All of this information, collected in one patient safety evaluation system, is protected as patient safety work product unless the provider determines that certain information must be removed* from the patient safety evaluation system for reporting to the state. Once removed from the patient safety evaluation system, this information is no longer patient safety work product.

73 FR 70742 (Nov. 21, 2008) (emphasis added). In other words, patient safety work product retains its federal privilege until it is removed from the patient safety evaluation system such as by inclusion in a medical or hospital record or in a separately required report. *See Tibbs v. Bunnell*, 448 S.W.3d 796, 2014 Ky. lexis 333, at *47-54 (Ky. 2014) (4-2 decision) (Abramson, J., dissenting).

Nothing in the record indicates that the emails were removed from the patient safety evaluation system to comply with other reporting requirements. Indeed, counsel for CHKD stated that "I am not aware of an incident report having been created," for state reporting requirements. (Feb. 2015 Tr. at 46.) Barring a finding that the emails were used to comply with federal, state, or internal reporting requirements separate from the patient safety evaluation system, the emails remain privileged.